Our seventh case for this morning is United States v. Vaccaro. Mr. Campion. Thank you and may it please the court. Travis Vaccaro's case presents what may appear to be a set of prosaic Fourth Amendment issues, a man who did illegally possess a gun, who also received a somewhat favorable sentence, a low-guideline sentence. But what happened here happens every day in this circuit, especially in the larger urban areas, the interplay between policing and police intrusions on privacy interests. And it involves two police officers who lied in federal court to help support and justify their search. So I ask the court to go back to February 7th or February 9th of 2017 and look at the context of the stop. Because context in a traffic stop that leads to a frisk certainly matters. And many of the factors that this court has held can justify a pat frisk don't exist here. And I'll cite the factor in no particular order in the cases this court has issued. High crime area, think about Oglesby and Patton and the Brown cases. A single officer versus two as we're here, think of Brewer and Brown. Evasive action of a defender, a suspect. They do say they see him squirming around in the car, right? Yes, the movement. What they deem to be furtive movement. Double over, bending at the waist. This is Tracy, I suppose. But they both see a movement. They describe it with varying degrees of hyperbole, but they see a movement. They do. And that's all they see. That's all they've got. Two seconds of that. What we don't have here is a high crime area. This is a commercial area, Lincoln Avenue in the south side of Milwaukee. It's 7 o'clock at night. After sundown, it's dark, but it's a well-lit area. And the officers both testified to that. Plenty of ambient lighting, plenty of street lighting. There are two officers, and they're officers nearby. When eventually Frontel and Tracy asked for help, the help came within a minute. Travis McCall was alone in the car. Travis's behavior was the opposite of evasive action. But they thought he was high, and then in fact, they learned he was, when he was agitated and belligerent. And I understand that got worse once he was put in the squad car. Did you want to say what about that? What about, isn't that a factor? It's a factor after the pat-frisk, because they did the pat-frisk and handcuffed him even before that. So I'll get to that. That weighs into the eventual search of the vehicle. But instantly, what they had was simply the movement. Two seconds of movement. Ultimately, in the discussion after they pulled Travis out of the car, he tells them, I just took off my jacket. As evidenced by the fact he did not have on his jacket. Which is a little peculiar, I must say. This is February, isn't it? I can't remember what month. It's February 9th. Yeah, it's February, and Milwaukee. I'm sorry to interrupt. I agree, it's a bit peculiar. But again, that is all they've got. And they notice he doesn't have a jacket on after the pat-frisk and the handcuffing. They also, in some other cases, the officers are looking. They have surveillance on a vehicle, or they want the vehicle stopped because of some particular police knowledge. Nothing like that here. They're just on routine patrol. They don't know if he's a good guy or a bad guy. They don't know him. So, just because time is short, we have the pat-frisk. I take it you're making an independent challenge for the search of the car. And I think it might be helpful, for me at least, for us to move to that. And if we assume that the pat-frisk is okay, that's just for the sake of argument, obviously. I know you're arguing it isn't. But that doesn't necessarily mean that the search of the car is also okay. Right. And as the magistrate noted, and I certainly argued it, what they have to justify the search of the car, again, is largely the pat-frisk. And as Judge Barrett, you said, a little bit of oddity in whether he's high or not. But there's also a lot of communication and a lot of recognition of officer contact. Show me your hands. He does. Take your left hand and open the door. He does. Turn around. He does. Face to put your hands behind your back. All of these things he's recognizing. He's communicating. He does say something odd. People are trying to kill me, man. If you watched the video, you heard that. He's some pressured speech. He also says, I just want to call my dad. Can I call my dad? To the extent he gets excited, he says the F word two times on the way to the car, and he wants to smoke a cigarette in the car. I think the officer somewhat overstated his getting excited in the car. But that happens well after they've started the search process. Counsel, let me ask you this. So if the police stop him, and let's say that we're saying the pat-frisk is okay because they see him reaching for something in the car. So there's a possibility that there's a gun in the car. Terry stopped. They're going to let him go back to the car. And in Arnold, we said that if there's a possibility of returning to the car, a possibility that there's a gun in the car, then to protect their safety. I mean, if he's acting kind of, I want to call my dad. I want to call my dad. People are trying to kill me. He's acting like he's under the influence. They can be concerned that if there is a gun there that he was trying down to reach, that as soon as he gets back into the car, he's going to pull up the gun and shoot them. Well, to justify the long search, the police have to have a reasonable belief that he's, that Travis Vaccaro at that time, is dangerous. And they also have to have, they also must be able to suspect that he could gain access to a weapon. Could I just ask, do you concede that he would be allowed to get back to the car? Because at that point, the police do have a real interest. Now, if there's something else going on that would have caused them to retain him in custody and do an inventory search of the car, then I think you might have an inevitable discovery issue. But at least you wouldn't have the search of the car for officer safety issue. If they're going to keep Vaccaro and not let him get back in the car, then there's no more justification for searching the car. Well, in this case, first of all, I don't think the government raised inevitable discovery. I didn't address that. We can speculate as to what they would have done with his status of being under supervision at the time. But I guess I have to presume that he would be allowed to return to the car. But there's a couple things that happen before the search. After they get him out, they immediately decide they're going to pat, frisk, and handcuff him, and then basically talk at him. What were you doing? You have a gun. The police officer asks about the center of counsel. He says, I didn't go in there. Where's that effect? And he said he took off his jacket. There's an opportunity at that time for the police to clearly see inside that front part of the vehicle there. They obviously didn't see inside the back of the vehicle. They have an opportunity to either enhance or dispel some of their fears. In this case, what they learned was simply that he was on probation. He gave modest information about that, and he's being supervised. I think that cuts both ways. Under Walden, from this court, it can be considered, but it can't be the only factor. Essentially, the police have a little bit of weirdness, Travis's complete cooperation, the fact that they pat, frisk him, he has no weapons on him, and then they put him in the car and search the car. I've got two minutes left. I'd like just to keep that. Okay, that's fine. Mr. Petashkin? May it please the court, I am Adam Petashkin on behalf of the United States. The court should have confidence in the district court's ruling that there was reasonable suspicion to support both the Terry Fisk and the protective search. The protective search is supported by several main facts on the record. Appellant's counsel wants to stress the furtive movements. That was just one factor. So you're talking about the pat down first? Or are you talking about the search of the car? I was focusing on the protective search of the car, your honor. Yeah, I mean, the car bothers me in light of Long and Gant. I think the Supreme Court has tried to move away from the position that just because somebody was once upon a time in a car, if they're far away from that car, he's in the backseat of the squad car handcuffed at this point, he's not going to reach into that car and do anything to the officer. Your honor, the United States would refer to the Arnold case where the where the appellant was also in the car at the time of the protective search. And the facts on the record make this search reasonable. One, the movements towards the front of the car and then towards the back to the repeated refusals to answer whether or not there was a gun in the car, which is an integral fact in this case, because these are two officers. Why do people have an obligation to answer all of these questions? That seems a strange position for the government to take. Well, your honor, if there wasn't a gun in the car, it would seem unusual that the appellant wouldn't immediately answer there wasn't a gun. Are you serious? I mean, with the police community relations at the low ebb they are right now, I can imagine all sorts of people not wanting to tell the police anything. Your honor, the United States would respectfully submit it was reasonable for the officers to be concerned for their safety when a person in a car during a traffic stop, which this which the Supreme Court has said in a Pennsylvania versus men's. I have no problem with the traffic stop, of course. The United States contends that it was reasonable for the officers to search that car, given the refusal to state whether or not there was a gun in the car. The agitated behavior. Is there ever a search of a car that would not be justified in your view? I think the government takes the position that this is a 100 percent overlap. If you make a traffic stop, you can search the car. That's not at all the United States position today, your honor. The facts in this specific case make this make this protective search reasonable because of the concerning behavior of the defendant. Because people wiggle in the car. Your honor, the facts in the record describe something significantly more than a wiggle. There's a movement towards the front floorboard of the car. And then immediately afterwards, a very quick movement towards the backseat of the car. To two officers at night in an urban area. This is concerning. It's not. Your brief is inconsistent about this. At one point, you say it's dark. Another point, you say it's a well-lit street. It's a well-lit street. It's only seven o'clock in the evening. It's in early February. The days are getting longer. Your honor, the United States was referring to the fact it was it was it was at the evening when the sun was not out. However, it was a well-lit street. So they could see what they were doing. They are right next to this car in a well-lit street. Let's not go for the dark part. Yes, your honor. And the United States would again stress the defendant's own behavior. Mr. Vaccaro refused to say there was a gun in the car. He was agitated. The officer suspected that there may have been intoxication. Do you think Gantt overrules or modifies Arnold in any way? No, your honor. The Arnold case, again, presenting facts that are very comparable to this. That wasn't Judge Barrett's question. Obviously, if the Supreme Court has trimmed our sails a little, we need to abide by that. If it didn't, you know, then fine. The United States would contend the holding in Arnold is still good law and the analysis in Arnold is still good law after Gantt. The analysis is based on the reasonableness of the search under Michigan v. Long. And the facts of Arnold, the United States would submit, are no longer allowed to be considered by the court. He says he was going to return to the car and in Gantt, it was a custodial arrest and he was not going back to the car and that was clear in the case. He wasn't going back to the car. There was no contention that he would. Yes, your honor. And again, those facts compare very comparably. And where is the contention in our case? I mean, in Gantt, certainly not because he's in reaching distance of the car at the time. The facts are identical. Locked in the squad car, locked in the squad car. I don't see in this record where there's been any development on the part of the government that Vaccaro was going to go back to his car. That's just sort of an assumption. We don't know. And Gantt may make that fact pertinent. Especially a guy like Vaccaro, who apparently there are some reasons where maybe he wasn't going to go anywhere near that car ever. Your honor, the only crime that there was probable cause for at the moment of the productive search was the passing through the red light, which is not. He's driving. What about driving while impaired? Your honor, the United States. I mean, let this guy back into a car. Your honor, the record on the impairment was not fully developed at the hearing. On the other hand, if the court is going to stress that the driver was intoxicated, then there's arguably a probable cause to search the car based on that intoxication. And the United States is not arguing that as it did not in its brief. The United States is stressing all the facts that are available to support the reasonableness of this protective search in order to buttress the officer's safety at that night. But the officer's safety rationale is precisely what Gantt rejects. You know, the government had argued over and over again before Gantt that once you had a suspect handcuffed, even if he wasn't within reaching distance of the car at the time of the search, you could do a vehicle search. And the court says no. You know, that goes too far, which is where it brings into play the question that we're now exploring. Whether the Arnold imagining of somebody then being released and walking back to the car, certainly an easy officer safety argument to make for that. But if the person was exactly like the person in Gantt and wasn't going to be walking back to the car, then we have a different situation. And if this guy is thrashing around and screaming obscenities inside the police car and he's behaving in a way that they think is imperative, and Judge Ripple was right, they may not have had any intention of letting him get back in that car and drive off. He's already just blown through a red light, you know, which seems like a strange behavior for somebody. And, Your Honor, the United States would respectfully submit that there was the potential for this man to be allowed back into the car and to leave the scene or to gather his belongings, as is discussed in Arnold. And if the intoxication is going to be stressed, then arguably that increases the probable cause to search the car for signs of that intoxication and potential drugs. And again, see, the United States wants to stress the very unusual movements towards the front of the car and then towards the back of the car after the car was stopped. The refusal to answer whether or not there was a gun in the car, which is very concerning to the officers. The fact that the defendant was agitated. And then we also have the false imprisonment conviction, a violent felony that the officers became aware the defendant had previously been convicted of and was either on parole or probation for. Those factors combined. At what point did they learn this? He's still in the back seat of the car. The squad car. The officers became aware of the false imprisonment conviction, Your Honor. During the pat down for us, there was an ankle monitor and the officers. Right, they see the ankle monitor. So again, the thought that they're going to just like in Arnold, have him sail right back into his car seems unlikely to me. They're going to let a guy with, you know, with an ankle monitoring device just get back into his car and go off. Well, Your Honor, the United States would respectfully submit. This isn't in the record, but a probation probably wouldn't have been revoked right there on the scene based on the traffic violation. No, of course not, but I mean, a brief period of custody to get all of these things sorted out doesn't seem at all unusual to me. Counsel, can I ask a question? Has it ever been, you know, the defendant conceded during his argument that this was a Terry stop, and I didn't see anywhere in the defendant's brief that he was challenging that this was a Terry stop, which means the presumption that there's no custodial arrest and he would be allowed to go back to the car. Has this ever been litigated? I didn't see anything litigated below. I think it becomes a much harder question if we're trying to figure out if it's a custodial arrest or a Terry stop. Has this ever been litigated, this question of whether he was going to be allowed to go back to the car? Has the defendant ever raised that or challenged that? At the initial suppression, Your Honor, it seemed to be conceded that this was a Terry stop and this was not detention. I'm sorry, it's detention, not arrest. That's the thing. This is this weird alternative universe we live in where a Terry stop where you are actually handcuffed is not regarded as an arrest. It's a detention. So it's the same thing, though. You're not free to leave. He wasn't free to leave from the back of the squad car. Yes, Your Honor. And, again, the United States— Whether you're calling it a Terry stop or a banana, he wasn't free to leave. Yes, Your Honor. And, again, the reason for the protective search is all of these actions of Mr. Vaccaro made this a situation where it was reasonable. The hallmark of this analysis is the reasonableness of the officer's actions. And this is for their own protection to search that car to see if there was a weapon that could have been acceptable. In Mr. Vaccaro's own actions, the totality of all those actions combined in this very fast-moving situation, a violent felon is stopped for running through a red light. He refuses to indicate whether or not there's a weapon in the car. All those facts the United States respectfully submits support the reasonableness of the officer's actions in this case. All right. Thank you. Thank you, Your Honor. Mr. Campion. Thank you. I just want to push back just a little bit on the officer's reasonableness. That which caught the officers in their own lies was the body cameras. There was no body camera or any officer camera that showed what they saw with regard to the movements of Travis Vaccaro in the car. So we have to take their word for it about what exactly they saw. And as Judge Wood described, I'm going to be parodying my brief. It is somewhat hyperbolic that we talk about it. I want to push back also on repeat refusals to answer. When Travis Vaccaro got taken out of the car, two officers are asking him questions, and they are peppering him with questions. Officer Tracy says repeatedly, where's the gun, Travis? Do you have a gun? Do you have a gun? He repeatedly says it while Travis is getting his legs and body parts felt by the other officer looking for what we didn't have on him, a gun. He's somewhat overpowered at this time. He eventually does say, I don't have anything. He does say that. The government doesn't like to point that out, but he does say that. He communicates a lot of other honest information. And I will tell you, in response to this discussion about Gant and whether he was under arrest and whether he would have ever gotten back to the car, it should have been brought up more in the evidence hearing, and I was a part of that. I will tell you that the obvious lies were so off-putting that it sort of distorted the end of the record. Well, the district court discredits quite a bit of what these officers said. Yes. Counsel, you didn't make that point. You didn't raise that in your brief either before us. No, I did not. Because I did not see this as a custodial stop because I knew from my view of the, excuse me, I did not see it as an arrest because I knew from my view of the videotapes that these officers did not see a firearm in the car. And they did not have probable cause to arrest for anything other than perhaps the stop. Excuse me, just the traffic ticket. So I did see this as fighting a long issue. And I agree with Judge Wood, your comments about the alternative universe, but I am also constrained by second circuit case law that bends a long way toward what is an arrest and what is just a continuum of custody. I would ask the court to find these searches unreasonable. Thank you very much. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.